# CHICAGO CITY RAILWAY COMPANY
## v.
## GEORGE H. HASTINGS.

*Street Railroads—Negligence—Starting with Sudden Jerk—Evidence—Instructions—Damages—Loss of Time.*

1. In an action brought for the recovery of damages for personal injuries, alleged to have been occasioned through the negligence of another, it is proper to instruct the jury to consider, in the estimation of damages, plaintiff's loss of time, there being neither allegations nor direct proof thereof, where the injury suffered necessarily imports such loss.

2. In the case presented, this court declines to interfere with the judgment for the plaintiff, for an injury alleged to have been occasioned by the sudden starting of a train of street cars.

[Opinion filed March 10, 1890.]

APPEAL from the Superior Court of Cook County; the Hon. JOHN P. ALTGELD, Judge, presiding.

Mr. C. M. HARDY, for appellant.

Messrs. ERNEST DALE OWEN and SETH F. CREWS, for appellee.

GARY, P. J. The appellee alleged in this declaration injury sustained by him through the negligence of the appellants, stating the manner—that his left thigh was broken, and as a consequence, that he has been sick and languishing from thence hitherto, and has become permanently crippled; and on the trial put in testimony to prove the truth of this declaration.

The brief of the appellants urges that the court erred in instructing the jury that in estimating the damages they might consider his loss of time so far as shown by the evidence, there being neither allegations nor direct proof of loss of time. From a broken thigh, which was alleged and proved, the loss of time is such an inevitable result, that the instruction is right. Chicago v. Sheehan, 113 Ill. 658. The brief also urges that no instruction on comparative negligence ought to have been given; that one or the other of the parties was wholly to blame, and that the effect of such an instruction was to confuse the jury and that it left them " at liberty to straddle" and find that each was partly blamable. Under the circumstances as the appellee in his testimony stated them, it might be argued that he was not as careful as he ought to have been. He says that as the grip reached the crossing, he raised his hand as a signal, and then walked in the direction the cars were going about the length of a car and the grip, and as the grip came to him and stopped, he took hold of a standard, put his foot on the footboard, and as he was raising himself, the car was started with a sudden jerk which threw him down. Why did he not take the car at the crossing, the counsel might ask of the jury.

The accident happened about 8:30 P. M. May 20, 1887, near, but north of Twenty-fourth street, on State street. There were four witnesses as to the occurrences at the time. The first point in dispute is whether the cars stopped at all before the appellee fell. He says they did, and the grip driver and a passenger say they did not. The appellee is, in this part of his case, corroborated by his sister-in-law. They both say that they walked together from Michigan avenue to State street on Twenty-fourth street and when near the track of the railway he signaled for the cars to stop, which they did. He then left her, they say, going northward, and she says she knew nothing more of him that night. Her home was on the northwest corner of the same streets, and she says that after he left her, she waited on the crossing until the cars came to a standstill, and when they started she went round the rear to her home; that after she had crossed she

noticed the cars stopped again, and she then saw a man that was hurt being removed.

It is fair inference from her testimony, though she does not say it, that she supposed that the appellee had safely boarded the car, or at any rate no thought to the contrary crossed her mind, so that she did not connect the hurt man with her brother-in-law. Now, if on this conflict of evidence between the appellee and his sister-in-law on the one side, and the driver of the grip and the passenger on the other, the jury believe that this car stopped at the crossing, they would naturally and reasonably adopt his version of the manner in which he was thrown down, instead of the contrary one, that he ran after, and attempted to jump upon the grip, which had not slackened speed at all.

The jury were instructed peremptorily that if he attempted to board the car while it was in motion, he could not recover whether he had signaled it to stop or not.

A paper purporting to be an affidavit by the appellee, was put in evidence by the appellants, with an admission by the counsel for the appellee that an absent witness, if present, would swear to such circumstances as would show that it was fairly obtained by the appellants. The appellee gave his version of how it was obtained, and the jury disregarded it. The court, in an instruction to the jury, told them that the affidavit was introduced for the purpose of impeaching the appellee. This statement might well have been omitted, yet it could have done no harm. Had it been an affidavit of a witness for the appellee, it would have been, after a proper foundation laid, admissible strictly as impeachment; but being the affidavit of the appellee himself, it was admissible as original evidence against him by his own admission, that the accident happened, not as he testified on the trial, but as the appellants endeavored to convince the jury that it did. But that instruction also told the jury that if from the evidence they believed that the accident occurred in the manner set out in the affidavit, the appellee could not recover, and that was the real question for the jury to pass upon. On the whole case there is no error, and the judgment is affirmed.

*Judgment affirmed.*